# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| MARION BATISTE | * | CIVIL ACTION NO. 05-1810 |
| --- | --- | --- |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Marion Batiste, born March 3, 1950, filed an application for supplemental security income ("SSI") on December 6, 2002, alleging disability as of October 1, 1991, due to chronic low back pain, hypertension, diabetes mellitus type II, anemia, and obesity.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

---

[1] Claimant filed previous applications for SSI which were administratively denied and not pursued any further.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:[2]

**(1) Records from University Medical Center ("UMC") dated December 9, 1999 to January 28, 2003**. Claimant was seen on December 15, 1999, after a fall. (Tr. 302). X-rays showed a mildly displaced fracture of her right tibial shaft. (Tr. 300, 304). A closed reduction of the fracture was satisfactory. (Tr. 291).

Claimant was also followed for hypertension and diabetes. (Tr. 268). On May 21, 2002, it was noted that claimant was noncompliant with her medications. Chest x-rays taken on July 9, 2002, were normal. (Tr. 262).

On July 30, 2002, claimant complained of dizziness, weakness, insomnia, anxiety attacks, nausea, diarrhea, and decreased appetite. (Tr. 258-59). The assessment was diabetes mellitus, high blood pressure, and anxiety. (Tr. 258). She was prescribed Zoloft, which improved her condition. (Tr. 251-52, 260).

On August 13, 2002, claimant complained of dizziness and weakness for one month. (Tr. 255). The assessment was dizziness due to anemia.

On October 22, 2002 and November 19, 2002, claimant had no medications because she had no income. (Tr. 242-43). At the November visit, she was 5 feet 6

---

[2]Although all of the records were reviewed by the undersigned, only those relating to the current application are summarized herein.

½ inches tall and weighed 300 pounds. (Tr. 242). Her blood pressure was 174/86. The assessment was Type II diabetes mellitus – noncompliant, uncontrolled, and hypertension – noncompliant.

Claimant failed to show for several appointments. (Tr. 240-41, 261, 273-77, 280-82, 284, 293-96).

**(2) Consultative Examination by Dr. Kenneth Ritter dated February 26, 2003 and March 10, 2003**. Claimant complained of high blood pressure, diabetes, low back pain with walking too far or doing too much physical work, and a chronic nervous problem. (Tr. 305). She also reported that her calves and anterior thighs hurt when she walked too far. Her medications included Humulin insulin, Glyburide/Metformin, Accupril, Zoloft, and Fergon.

On examination, claimant's blood pressure was 142/84. (Tr. 306). She was 5 feet 7 ½ inches tall and weighed 307 pounds. She had a normal gait and station for her weight.

Claimant had negative straight leg raises bilaterally. She had no ankle swelling. Pulses were 1+ and equal. She was able to get up and down from a chair and from the exam table quickly and without difficulty. DTRs were 1-2+ and equal.

Dr. Ritter noted that he had the opportunity to review the "scant" medical records which were sent to him. His impression was significant obesity, hypertension

3

under fairly good control, adult onset diabetes mellitus under unknown control, a long history of very poor compliance with medications and recommendations, and complaints of chronic low back pain if claimant walked too far or did too much physical work. (Tr. 307).

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Ritter opined that claimant could lift/carry 25-35 pounds occasionally and 10-15 pounds frequently. (Tr. 308). He stated that claimant's ability to stand/walk and sit were not affected by her impairment. He found that she was able to climb and stoop occasionally, balance frequently, and kneel, crouch, and crawl occasionally to frequently.

In response to a letter from the Disability Determinations Service requesting more information related to claimant's back range of motion, Dr. Ritter wrote that claimant's problems included significant obesity along with complaints of chronic low back pain if she walked too far or did too much physical work. (Tr. 311). He opined that her pain was mostly secondary to her excess weight. He determined that the range of motion of her back was limited by her significant obesity, but not by any specific back problems that he could find. He noted that she had negative straight-leg raises and was able to get up and down from a chair and from the exam table without difficulty.

**(3) Psychiatric Review Technique Form dated April 11, 2003**. Lawrence Klusman, Ph.D., assessed claimant for anxiety-related disorders. (Tr. 313). He found that she was mildly restricted as to activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. She had no episodes of decompensation. (Tr. 323).

**(4) Residual Functional Capacity ("RFC") Assessment dated April 11, 2003**. Claimant was found to be able to lift 20 pounds occasionally and 10 pounds frequently. (Tr. 328). She could stand/walk and sit about six hours in an eight-hour workday. She had unlimited push/pull ability. She could climb ramps and stairs, crouch, and crawl occasionally; balance, stoop, and kneel frequently, and never climb ladders, ropes, and scaffolds. (Tr. 329). She was limited by obesity. (Tr. 329, 332).

**(5) Records from Dr. Leander Odom dated August 11, 2003 to October 29, 2003**. On August 11, 2003, claimant complained of shortness of breath and low back pain. (Tr. 347). An echocardiogram taken on August 13, 2003, revealed normal left ventricle systolic function with an ejection fraction of 60%, and mild pulmonary hypertension. (Tr. 340). The diagnosis was dyspnea on exertion.

On October 29, 2003, claimant was seen for followup of diabetes mellitus and back pain. (Tr. 345). She had no complaints.

**(6) Records from UMC dated April 1, 2003 to May 12, 2003**. On April 1, 2003, claimant's diabetes had improved, but was not at goal. (Tr. 370). Claimant weighed 302 ½ pounds, and her blood pressure was 130/82. The assessment was hypertension – controlled, back pain, and depression. She was prescribed Ultram for pain.

On April 28, 2003, claimant reported having several episodes of hypoglycemia. (Tr. 368). She also complained of severe low back pain, which was unrelieved by Ultram. The assessment was Type II diabetes mellitus – uncontrolled, hypertension – controlled, and low back pain. She was prescribed Lortab.

On May 12, 2003, claimant's diabetes was improving. (Tr. 363). Her hypertension had increased to 169/85. She also had anemia with low iron.

Claimant failed to show for several appointments. (Tr. 351-54, 356, 361).

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on January 7, 2004, claimant testified that she could not stand "that long" and became very weak. (Tr. 30). She reported that she saw the doctor every three months for diabetes and was taking insulin. (Tr. 30-31). She also stated that she was anemic and felt tired a lot. (Tr. 36).

Claimant reported that she was 5 feet 7 inches tall and weighed 307 pounds. (Tr. 31). She testified that she was taking Zoloft for depression. (Tr. 33). She was

6

also taking Hydrocodone for pain. (Tr. 35).

Regarding activities, claimant testified that she did not drive. (Tr. 31). She reported that she could wash dishes and clothes, but it took an hour to do each because of back pain. (Tr. 32). She stated that her daughter came over and visited during the day. (Tr. 33).

As to restrictions, claimant testified that she could stand about five hours in a day. She stated that she napped the rest of the time. She reported that she had problems with standing and sitting for long periods, and had to take breaks when doing chores. (Tr. 35-36).

**(8) The ALJ's Findings**. Claimant argues that: (1) the ALJ failed to properly evaluate her obesity in combination with her other medically-determined impairments as required under SSR 02-01p, resulting in Steps 3 through 5 of the evaluation process being flawed; (2) the ALJ erred in determining claimant's residual functional capacity. Because I find that the ALJ erred in failing to consider the effect of claimant's obesity on her impairments, I recommend that this matter be **REMANDED** for further proceedings.

In the first argument, claimant asserts that the ALJ erred in failing to consider the combined effects of her obesity with her low back pain and right leg impairment in accordance with SSR 02-1p. Prior to 1999, the Social Security regulations

included a listing for obesity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.09 (1999).[3] On August 24, 1999, the Commissioner published a final rule, deleting § 9.09 for obesity. 64 FR 46122 (1999). This listing was deleted because experience showed that the criteria in § 9.09 were not appropriate indicators of listing-level severity. SSR 02-01p (September 12, 2002). The final rule was effective on October 25, 1999. *Id.*

Even though the listing at 9.09 was deleted, obesity is still addressed in the listings. SSR 02-01p. Paragraphs were added to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. *Id.* Section 1.00Q, which was added to the musculoskeletal listing, states that obesity is considered to be a medically determinable impairment, and reminds adjudicators to consider its effects when evaluating disability. *Id.*; 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 1.00Q. This provision also reminds adjudicators that the combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. *Id.* Therefore, "when determining whether an individual with obesity has a listing-level impairment or

---

[3]The criteria for the musculoskeletal impairment under § 9.09 was a "[h]istory of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine."

8

combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must* consider any additional and cumulative effects of obesity." (emphasis added). *Id.*

A review of the decision reflects that nowhere did the ALJ refer to § 1.00Q, nor does the record reflect that the ALJ considered the combined effects of obesity with claimant's musculoskeletal impairments as required by the regulations. The medical records from UMC, the state agency medical consultant, and Dr. Ritter consistently reflect that claimant was "obese." (Tr. 243, 248, 268, 307, 329, 332, 363). The records also indicate that claimant had low back pain (Tr. 305, 311, 345, 347), as well as poorly controlled hypertension and diabetes (Tr. 242-43, 307, 370). In fact, Dr. Ritter noted that claimant's range of motion of her back was limited by her "significant obesity." (Tr. 311).

Claimant also argues that her obesity affected her ability to ambulate effectively under § 1.00B2b. (rec. doc. 8, p. 6). Social Security Rulings[4] interpreting the evaluation of obesity dictate that "if the obesity is of such a level that it results in

---

[4] The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The Fifth Circuit has frequently relied upon the rulings in evaluating ALJs' decisions. *Id.* (citations omitted).

an *inability to ambulate effectively*, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence." (emphasis added).

Under the Social Security listing at § 1.00B2b, "inability to ambulate effectively" is defined as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. ***
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Subpt. P, App. 1, § 1.00B2b.

In this case, the record reflects that claimant fractured her right tibia in 1999, which had healed well. (Tr. 225, 291, 302). While claimant had a noticeable limp at the time of Dr. Taylor's consultative examination in 2001, she had none at the time of Dr. Ritter's evaluation in 2003. (Tr. 227, 306). There are no records indicating that her obesity affected her ability to ambulate during the relevant period at issue. Thus, this argument lacks merit.

However, the undersigned finds that the ALJ failed to consider "any additional and cumulative effects of obesity" in assessing her back impairment as required by § 1.00Q and SSR 02-1p. Thus, the ALJ erred in assessing this claim.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to assess claimant's impairments in light of her obesity and develop the record by conducting an adequate hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed August 15, 2006, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE